**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| CLAYTON WILDER,<br><br>     Plaintiff,<br><br>v.<br><br>EXACTECH, INC., and EXACTECH, US,<br><br>     Defendants. | Case No.: _____<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Clayton Wilder, brings this action for personal injuries suffered as a direct and proximate result of the misconduct of Defendant Exactech, Inc., and Defendant Exactech US, Inc., (collectively, "Defendants" or "Exactech") and demands a trial by jury. In support of his Complaint, Plaintiff alleges as follows:

**NATURE OF THE CASE**

1. This personal injury action relates to Exactech's misconduct with respect to its design, testing, manufacturing, packaging, storage, labeling, distribution, marketing, or sale of the Optetrak, Optetrak Logic, and Truliant Total Knee Arthroplasty ("TKA") Systems as well as the Vantage Total Ankle Arthroplasty ("TAA") System.[1]

2. For many Americans, the solution to chronic or worsening knee or ankle joint pain is to replace the joint in its entirety. While most knee and ankle joint replacements last for several years, Exactech's Optetrak, Truliant, and Vantage systems fail sooner and more often than others on the market.

---

[1] For the sake of brevity, this Complaint will refer to the Truliant TKA and Vantage TAA Systems simply as "Truliant" and "Vantage," respectively, and to the Optetrak and Optetrak Logic TKA Systems simply as "Optetrak."

3.      Exactech admits that many of these premature and frequent failures are due to the improper packaging of a component part—the polyethylene insert—which exposes the part to oxygen, causes it to oxidize, and, ultimately, to deteriorate at an accelerated rate. This eventually leads to premature failure of the entire knee or ankle system.

4.      Because of Exactech's negligence, including its inadequate packaging of this component part, thousands of patients implanted with Optetrak, Truliant, and Vantage Systems have had to undergo (or likely will have to undergo) significant revision surgeries to remove and replace the defective devices.

5.      Indeed, Plaintiff was implanted with an Optetrak TKA System, which failed prematurely. As a result, Plaintiff will undergo a revision surgery, incur substantial medical bills and expenses, and continue experiencing significant and ongoing personal injuries.

6.      Accordingly, Plaintiff brings the instant suit, demands judgment against Exactech, and requests, among other things, compensatory damages, statutory damages, punitive damages, attorneys' fees, and costs.

## THE PARTIES

### PLAINTIFF

7.      Plaintiff, Clayton Wilder, is a resident of Kokomo, Indiana, in Howard County and, thus, a citizen of Indiana.

8.      Plaintiff was implanted with an Optetrak TKA System in 2017, which failed prematurely on November 2020.

9.      As a result of the failure of Exactech's Optetrak TKA System, Plaintiff will have to undergo revision surgery, receive physical therapy, and continue to incur substantial medical bills and expenses.

<u>**DEFENDANTS**</u>

10.     Defendant Exactech, Inc., is a Florida corporation with its principal place of business located at 2320 NW 66th Court, Gainesville, Florida 32653.

11.     Upon information and belief, Defendant Exactech, Inc., designs, tests, develops, manufactures, labels, packages, markets, distributes, or sells orthopedic joint replacements, including the Optetrak, Truliant, and Vantage Systems and related surgical instrumentation, throughout the United States, including in Indiana.

12.     Upon information and belief, at all relevant times, Defendant Exactech, Inc., was engaged in promoting, distributing, selling, or otherwise introducing its TKA and TAA Systems into interstate commerce throughout the United States, including in Indiana, and generating substantial revenue as a result.

13.     Upon information and belief, Defendant Exactech, Inc., manufactured the Optetrak TKA System implanted in Plaintiff.

14.     Upon information and belief, Defendant Exactech US, Inc., is a wholly-owned subsidiary of Exactech, Inc., with its principal place of business located at 2320 NW 66th Court, Gainesville, Florida 32653.

15.     Upon information and belief, and according to public filings, Defendant Exactech US, Inc., conducts Exactech's U.S. sales and distribution activities.

16.     Upon information and belief, Defendant Exactech US, Inc., is engaged in the business of promoting, distributing, selling, or otherwise introducing its TKA and TAA Systems into interstate commerce throughout the United States, including in Indiana, and generating substantial revenue as a result.

17.     Upon information and belief, the Optetrak, Truliant, and Vantage Systems

3

manufactured by Defendant Exactech, Inc., were distributed by Defendant Exactech US, Inc., throughout the United States, including in Indiana, where Plaintiff's injuries occurred.

18.    Upon information and belief, Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301 is a registered agent of or is authorized to accept service of process for both Exactech, Inc., and Exactech US, Inc.

## JURISDICTION & VENUE

19.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship between Plaintiff and all Defendants.

20.    Upon information and belief, at all relevant times, Exactech, through its respective employees, agents, or sales representatives, transacted business in, solicited residents in, and engaged in substantial business activities—including activities giving rise to the misconduct described in Plaintiff's Complaint—in Indiana, and throughout the United States.

21.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because many of the Defendants reside there, all Defendants transact and conduct business in Indiana, a substantial part of the acts and omissions giving rise to this Complaint occurred in Indiana, and/or because Plaintiff Clayton Wilder is a resident and citizen of Indiana.

## FACTUAL BACKGROUND

### *Knee and Ankle Replacements and Components*

22.    Total knee arthroplasty or total ankle arthroplasty is a common orthopedic surgery that involves replacing the articular surfaces of the joint with smooth metal and highly cross-linked

polyethylene plastic.[2]

23.     For example, in a total knee arthroplasty the femoral condyles and tibial plateau of the knee joint are replaced.

**Knee Joint**        **Ankle Joint**

 

24.     Arthroplasty polyethylene inserts are the plastic liners placed between the two metallic surfaces in a fixed-bearing knee or ankle replacement. In essence, these polyethylene inserts serve as cushions—or shock absorbers—between the metal components in knee and ankle replacements.

***Exactech® Knee and Ankle Polyethylene Inserts***

25.     Exactech's TKA systems are classified as a knee joint patellofemorotibial polymer/metal/polymer semi-constrained cemented prosthesis. They feature a mix of polyethylene and metal-based components.

26.     Exactech's TKA systems are comprised of the following parts: a femoral cap, a tibial tray, and sometimes a patellar cap.  The patellar cap and tibial tray are both made of polyethylene.

---

[2] For illustrative purposes, below are diagrams of the knee and ankle joints.



***Properties of Polyethylene and its Use in TKA and TAA Systems***

27.     Polyethylene is a polymer of ethylene—a hydrocarbon—which consists of as many as 200,000 ethylene repeat units. Ethylene is polymerized in the presence of catalysts to make ultra-high molecular weight polyethylene ("UHMWPE"), which is commercially produced as resin powder. The resin powder is then consolidated into rods/sheets from which final inserts found in TKAs and TAAs are made.

28.     Polyethylene is a significant element of TKAs and TAAs, and its development has undergone considerable changes in the last thirty years. While polyethylene is commonly used in TKAs and TAAs, there are several concerns with *in vivo* use. Specifically, polyethylene inserts cannot be exposed to oxygen during the packaging and storing process. Exposing polyethylene inserts to oxygen creates a chemical reaction called oxidization, which causes the premature wear or degradation of polyethylene inserts. As such, polyethylene inserts must be handled with a high degree of care when processed, packaged, and stored.

29.     The oxidation process is time-dependent and can also occur before the liner is even implanted in a patient, if the liner is exposed to air. Thus, airtight packaging is crucial and requires multiple barriers that adequately prevent oxidation.

30.     Wear characteristics of polyethylene are directly influenced by techniques of processing, storing, and packaging methods. These processes are significantly aimed at preventing the oxidation of the polyethylene inserts. Proper packaging and storage prevent oxidation and

reduce the risk of failure from strength changes in the polyethylene inserts. Indeed, preventing the oxidation of polyethylene through proper processing, storing, and packaging methods directly prevents the wear of the polyethylene inserts.

31.    Wear of polyethylene is a direct cause of component loosening and other component failures. Accordingly, the wear of polyethylene components is likely to cause severe complications, including swelling, grinding, instability, tissue damage, osteolysis, permanent bone loss and other injuries. This ultimately causes the entire system to fail and patients to need revision surgeries.

### The Importance Of Appropriate Packaging Is Well-Understood

32.    It is widely understood in the medical device industry that if polyethylene components are exposed to air, they will oxidize and degrade. Accordingly, when manufactured and stored, polyethylene components must and should be packaged in multiple-layered, sufficiently oxygen-resistant vacuum-sealed bags.

33.    Indeed, throughout the medical device industry, precautions are taken to ensure polyethylene components are properly packaged to avoid oxidation.

34.    For example, the manufacturer Smith & Nephew, which began producing the Salto™ ankle systems in 2006, an ankle replacement system with polyethylene, uses a "double peel package" when sterilizing and packaging its ankle polyethylene products.

### Exactech's False & Misleading Performance Claims

35.    Upon information and belief, represented to doctors, patients, and the general public that its fleet of TKA and TAA systems were "excellent," high quality, and reliable. For example, its TKA marketing materials boasted:

> "with a design developing for more than four decades and excellent clinical and laboratory results, surgeons can have confidence in a knee system that continues to demonstrate performance over time. Surgeons around the world continue to

document excellent long-term clinical results with the Optetrak family of products."

36.     Upon information and belief, Exactech's marketing materials similarly boasted low revisions rates.

37.     Upon information and belief, Exactech's marketing materials did not disclose several investigations and ongoing claims that its TAA and TKA systems were, in fact, failing much sooner and at much higher rates than others on the market.

### Exactech's History of TKA and TAA Performance Issues

38.     Upon information and belief, as early as 2012, Exactech was aware (or should have been aware) that its TKA systems were failing at a higher rate than promoted due to the oxygenation of the polyethylene components.

39.     For example, reports in the Manufacturer and User Facility Device Experience (MAUDE) database in 2012 indicate instances of revision due to "loose tibial component", "aseptic loosening", "pain and visible loosening", "polyethylene deformation", "polyethylene worn", and "pain, limited mobility, knee swelling and sensitivity" caused by loosening in the joint replacement.

40.     Additional examples from 2014 list "revision due to tibial loosening", "tibial loosening", "revision of [O]ptetrak knee components due to tibial loosening", "revision due to pain and loosening", and "revision of [O]ptetrak knee components due to aseptic loosening", as well as several reports of "revision of knee components due to tibial loosening", and "revision of [O]ptetrak knee components reportedly due [to] aseptic loosening".

41.     And this experience was not unique to U.S. patients. Upon information and belief, according to the 2020 Australian National Joint Replacement Registry, the rate of revision for a TKA utilizing an Optetrak tibial component with a Optetrak-CR femoral component was 8.5% at

ten (10) years and 10.2% at ten (10) years when implanted with a Optetrak-PS femoral component; both rates far exceed international guidelines for acceptable revision rates, upon information and belief.

42.     Likewise, upon information and belief, accord the Australian Orthopaedic Association has remarked that the Optetrak TKA Systems have a "higher-than-expected" rate of revision.

43.     Upon information and belief, per the recommendations established by the International Benchmarking Working Group and applied by the Australian Orthopaedic Association, the Optetrak TKA Systems do not qualify for a "superiority benchmark" or even a "non-inferiority benchmark" because of its high failure rate.

### *Exactech Was Aware Of The Problem, But Did Nothing*

44.     Upon information and belief, it is widely recognized and accepted in the medical device industry that reported AERs represent only a small fraction of adverse events associated with and/or caused by a particular device.

45.     Despite Exactech's knowledge of early-onset failures of its TKA systems, Exactech continued to design, warrant, manufacture, promote, sell, and distribute them without alerting surgeons or patients of its potential increased risks of early-onset failures.

46.     Exactech never changed the labeling, marketing materials, or product inserts to adequately and accurately warn patients or doctors of the associated increased risks of early failure due to loosening or polyethylene wear.

47.     Exactech did, however, quietly—and without providing information or explanation for its decision to patients, doctors, or the general public—begin replacing the tibial trays of some Optetrak models.

*Recent Exactech Recall*

48.     Finally, in August 2021, Exactech recalled a limited number of its TKA and TAA systems.

49.     Upon information and belief, Exactech notified distributors and sales representatives of the limited recall on approximately August 30, 2021, in a letter entitled 'URGENT MEDICAL DEVICE RECALL.' In part, the letter clarified that Exactech was "removing all Knee and Ankle UHMWPE products labeled with an 8-year shelf life and not packaged in EVOH/Nylon bags, in a phased approach over 12 months." [3]

50.     Upon information and belief, the actions and timing as to each phase was described as follows:

> **Phase 1:** immediately return all knee and ankle UHMWPE devices labeled with an 8-year shelf life that will be 5 years old or older by 08/31/2022 not packaged in EVOH/Nylon bags.

> **Phase 2:** between 05/31/2022 to 08/31/2022, returning all remaining knee and ankle UHMWPE devices labeled with an 8-year shelf life not packaged in EVOH/Nylon bags." [4]

51.     Notably, Exactech did not issue any communications to surgeons who had implanted Optetrak, Truliant, or Vantage Systems with a recalled polyethylene component.

52.     Exactech did not use any communications to patients who had received an Optetrak, Truliant or Vantage Systems with a recalled polyethylene component.

53.     In fact, it took nearly six (6) months for Exactech to notify patients, doctors, and the public that its Optetrak, Truliant, or Vantage Systems were defective and contained faulty polyethylene liners.

---

[3] *See* U.S. FOOD & DRUG ADMIN., *Class 2 Device Recall OPTETRAK Comprehensive Knee System* (Oct. 04, 2021) https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=189015.
[4] *Id*.

54.     On February 7, 2022, Exactech issued an "Urgent Medical Device Correction" in which it informed health care professionals that:

> After extensive testing, we have confirmed that most of our inserts manufactured since 2004 were packaged in out-of-specification (referred to hereafter as "non-conforming") vacuum bags that are oxygen resistant but do not contain a secondary barrier layer containing ethylene vinyl alcohol (EVOH) that further augments oxygen resistance. The use of these non-conforming bags may enable increased oxygen diffusion to the UHMWPE (ultra-high molecular weight polyethylene) insert, resulting in increased oxidation of the material relative to inserts packaged with the specified additional oxygen barrier layer. **Over time, oxidation can severely degrade the mechanical properties of conventional UHMWPE, which, in conjunction with other surgical factors, can lead to both accelerated wear debris production and bone loss, or component fatigue cracking/fracture, all leading to corrective revision surgery.**[5]

55.     The "Urgent Medical Device Correction" clarified that Exactech was expanding its recall to now include all knee arthroplasty polyethylene inserts packed in non-conforming bags regardless of label or shelf life. The components subject to the recall now included: OPTETRAK®: All-polyethylene CR Tibial Components, All-polyethylene PS Tibial Components, CR Tibial Inserts, CR Slope Tibial Inserts, PS Tibial Inserts, HI-FLEX® PS Tibial Inserts; OPTETRAK Logic®: CR Tibial Inserts, CR Slope Tibial Inserts, CRC Tibial Inserts, PS Tibial Inserts, PSC Tibial Inserts, CC Tibial Inserts; TRULIANT®: CR Tibial Inserts, CR Slope Tibial Inserts, CRC Tibial Inserts, PS Tibial Inserts, PSC Tibial Inserts; and VANTAGE Fixed-Bearing Liner Components.[6]

56.     In its February 7, 2022 correspondence, Exactech advised surgeons that revision surgery should be considered for patients who exhibited symptoms consistent with premature polyethylene wear, like "new or worsening pain, inability to bear weight, grinding or other noise,

---

[5] *See* Exactech's "Urgent Medical Device Correction" letter, dated Feb. 7, 2022, available online at: https://www.exac.com/wp-content/uploads/2022/02/Exactech-DHCP letter.02.07.2022.pdf.
[6] *Id.*

swelling, or [joint] instability."

**PLAINTIFF'S FAILED IMPLANT &**
**SUBSEQUENT NEED FOR REVISION SURGERY**

57.     On October 24, 2017, Plaintiff, Clayton, underwent a TKA on his right knee and was implanted with an Optetrak TKA System at Riverview Health Hospital located at 395 Westfield Rd, Noblesville, IN 46060.

58.     Plaintiff's Optetrak TKA System subsequently failed on November 2020—approximately three (3) years after his knee replacement.

59.     Beginning November 2020, Plaintiff has suffered significant symptoms associated with the premature failure of his entire right knee joint replacement system, including grinding, swelling, instability, and severe pain.

60.     As a result, Plaintiff's treating physician indicated him for an additional surgery to remove the implant and replace it with another joint replacement system. The revision surgery is set for July 2022.

61.     Because he will require an additional revision surgery, Plaintiff will suffer significant and continuing personal injuries, be limited in his activities of daily living, require additional physical therapy, and incur substantial medical bills and expenses.

62.     As a direct, proximate and legal consequence of the defective nature of the Optetrak TKA System, Plaintiff has suffered and will continue to suffer significant, permanent, and continuing personal injuries, as described herein.

**EQUITABLE TOLLING OF STATUTE OF LIMITATIONS**

63.     Exactech willfully, wantonly, or intentionally withheld information from Plaintiff, Plaintiff's healthcare providers, and the public concerning the known hazards associated with its Optetrak, Truliant, and Vantage Systems.

64.     Exactech willfully, wantonly, or intentionally withheld safety-related warnings from Plaintiff, Plaintiff's healthcare providers, and the public concerning the known hazards associated with its Optetrak, Truliant, and Vantage Systems.

65.     Exactech willfully, wantonly, or intentionally withheld instructions from Plaintiff, Plaintiff's healthcare providers, and the public regarding how to identify, mitigate, or treat known hazards associated with its Optetrak, Truliant, and Vantage Systems.

66.     Exactech willfully, wantonly, intentionally conspired, and acted in concert to ignore relevant safety concerns and deliberately not study the long-term safety and efficacy of its Optetrak, Truliant, and Vantage Systems, including the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems.

67.     Exactech failed to disclose a known defect in its design, packaging, or delivery of its Optetrak, Truliant, and Vantage Systems, including the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems, and instead affirmatively misrepresented that its TKA and TAA systems were as safe as—or even "superior" to—other comparable TKA and TAA systems on the market.

68.     Due to the absence of any warning or other information by Exactech as to the significant health and safety risks posed by its Optetrak, Truliant, and Vantage Systems—more specifically, the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems—Plaintiff was unaware that his TKA contained a faulty liner, which was likely to cause a premature failure of the entire joint replacement system. Additionally, this danger was not known to Plaintiff's healthcare providers or to the general public.

69.     Given Exactech's deliberate actions designed to deceive or mislead Plaintiff, Plaintiff's healthcare providers, and the general public with respect to the safety and efficacy of

Exactech's TKA and TAA systems, Defendants are estopped from relying on any statute of limitations defenses.

## COUNT I – STRICT LIABILITY – MANUFACTURING DEFECT

70.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

71.     At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

72.     Exactech had a duty to manufacture, pack, and distribute the Optetrak, Truliant, and Vantage Systems, including their component parts, in a manner that prevented unreasonable risk of harm or injury to patients, including Plaintiff.

73.     Exactech knew (or reasonably should have known) that its Optetrak, Truliant, and Vantage Systems were defective as manufactured.

74.     The Optetrak, Truliant, and Vantage Systems, as manufactured, were not reasonably safe as manufactured, packaged, or distributed by Exactech.

75.     The Optetrak, Truliant, and Vantage Systems, including their component parts, were defective as manufactured because Exactech:

   a.  packaged the polyethylene components of the Optetrak, Truliant, and Vantage Systems in vacuum bags that contained a secondary barrier layer containing ethylene vinyl alcohol (EVOH) to prevent the components from oxidizing before they were implanted;

   b.   selected materials to package the Optetrak, Truliant, and Vantage Systems, which were of an inferior grade or quality;

14

c.   failed to set appropriate manufacturing specifications to ensure that the Optetrak, Truliant, and Vantage Systems performed safely, appropriately, and as intended;

d.   failed to periodically test to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

e.   failed to establish internal quality control protocols and procedures to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

f.   failed to comply with internal quality control protocols and procedures to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

g.   failed to take corrective actions to eliminate or minimize further failures of the Optetrak, Truliant, and Vantage Systems;

h.   failed to select appropriate third parties to package the polyethylene inserts used in the Optetrak, Truliant, and Vantage Systems;

i.   failed to properly supervise and monitor the packaging of the polyethylene inserts used in the Optetrak, Truliant, and Vantage Systems; and

j.   were otherwise negligent in the manufacture, packaging, or distribution of the Optetrak, Truliant, and Vantage Systems.

76.   The manufacturing defects in the Optetrak, Truliant, and Vantage Systems existed when the devices left Exactech's control.

77.   Plaintiff's doctors implanted the Optetrak, Truliant, or Vantage Systems in the manner in which it was intended and recommended to be used, making such use reasonably

foreseeable to Exactech.

78.     The Optetrak, Truliant, and Vantage Systems, including their component parts, which were manufactured, packaged, or distributed by Exactech, reached patients, like Plaintiff, without substantial change in condition.

79.     Plaintiff could not, by the exercise of reasonable care, have discovered the manufacturing defect and perceived its dangers or avoided injury.

80.     Exactech is strictly liable for the defective manufacture of its Optetrak, Truliant, and Vantage Systems, the distribution, marketing, or sale of the defectively manufactured Optetrak, Truliant, and Vantage Systems and the injuries sustained by Plaintiff.

81.     As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

82.     **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT II – STRICT LIABILITY – DESIGN DEFECT

83.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

84.     At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for

implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

85.     Exactech had a duty to develop, design, and test both the Optetrak, Truliant, and Vantage Systems and their component parts, including the respective packaging of each, to produce a product that did not present an unreasonable risk of harm or injury to patients, including Plaintiff.

86.     Exactech knew (or reasonably should have known) that the Optetrak, Truliant, and Vantage Systems, as designed, presented an unreasonable risk of harm or injury to patients, including Plaintiff.

87.     Exactech knew (or reasonably should have known) that the Optetrak, Truliant, and Vantage Systems were not reasonably safe for its expected, intended, or foreseeable uses as designed by Exactech.

88.     As alleged herein, Exactech knew or had reason to know that the Optetrak, Truliant, and Vantage Systems caused an increased risk of harm to patients, like Plaintiff, due to the Optetrak, Truliant, and Vantage Systems' propensity to undergo substantial early polyethylene wear, component loosening, or other failure causing serious complications, including grinding, swelling, tissue damage, instability, osteolysis, bone loss and other injuries, as well as the need for revision surgery in patients.

89.     The Optetrak, Truliant, and Vantage Systems, including their component parts and corresponding packaging, were defective as designed because Exactech:

        a.     developed the Optetrak, Truliant, and Vantage Systems in a manner which resulted in a propensity to undergo substantial early polyethylene wear, component loosening, or other failure modes;

        b.     failed to design the packaging for the polyethylene components of the Optetrak,

Truliant, and Vantage Systems in vacuum bags that contained a secondary barrier layer to prevent the components from undergoing increased oxidation;

c.  designed the packaging of the Optetrak, Truliant, and Vantage Systems and their component parts to require materials which were of an inferior grade or quality;

d.  failed to conduct adequate testing on component parts, subassemblies, or finished Optetrak, Truliant, and Vantage Systems as packaged and distributed;

e.  failed to test an adequate number of samples of Optetrak, Truliant, and Vantage Systems on an ongoing basis to ensure they were safe and performed as designed;

f.  failed to take adequate steps to specifically identify failure modes with the Optetrak, Truliant, and Vantage Systems with clarity and to suggest methods to monitor, avoid, or prevent further failures;

g.  failed to identify or note the significance of any testing that resulted in failures of the Optetrak, Truliant, and Vantage Systems;

h.  failed to take corrective actions to eliminate or minimize further failures of the Optetrak, Truliant, and Vantage Systems;

i.  failed to adequately design packaging specifications for the components, subassemblies, or the finished Optetrak, Truliant, and Vantage Systems;

j.  designed the polyethylene insert and packaging in a manner that increased the risk of users and patients suffering from pain, discomfort, injury and the need for revision surgery; and

k.  were otherwise negligent in the development, design, or testing of the Optetrak,

Truliant, and Vantage Systems.

90.     The design defects in the Optetrak, Truliant, and Vantage Systems and its packaging existed when the devices left Exactech's control.

91.     Plaintiff's doctors implanted the Optetrak, Truliant, or Vantage System in the manner intended, making such use reasonably foreseeable to Exactech.

92.     The Optetrak, Truliant, or Vantage Systems as designed by Exactech reached Plaintiff and other patients without substantial change in its condition.

93.     The Optetrak, Truliant, and Vantage Systems and their packaging as designed carried risks that were outweighed by any utility of the design of the devices and packaging because when paired together with the devices, the Optetrak, Truliant, and Vantage Systems were dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

94.     The Optetrak, Truliant, or Vantage Systems and their packaging were defective in design and unreasonably dangerous when they entered the stream of commerce and received by Plaintiff, because the foreseeable risks exceeded or outweighed the purported benefits associated with the devices.

95.     Feasible safer alternative designs providing the same functional purpose were available to Exactech at the time the Optetrak, Truliant, and Vantage Systems were designed and packaged and offered for sale in the market.

96.     For example, Exactech could have utilized vacuum bags containing a secondary barrier layer containing ethylene vinyl alcohol (EVOH), like other manufacturers in the industry do, to prevent the polyethylene components from undergoing increased oxidation.

97.     At no time did Plaintiff (or Plaintiff's doctors) have any reason to believe that the Optetrak, Truliant, or Vantage Systems and their packaging were in a condition not suitable for

proper and intended use.

98.     Plaintiff could not, by the exercise of reasonable care, have discovered these design defects and perceived its dangers or avoided injury.

99.     Exactech is strictly liable for the defective design of the Optetrak, Truliant, and Vantage Systems and their component parts, including the respective packaging of each.

100.    As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

101.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT III – STRICT LIABILITY – FAILURE TO WARN

102.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

103.    At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

104.    Exactech had a duty to provide adequate warnings and instructions regarding the Optetrak, Truliant, and Vantage Systems (and their use) so that its TKA and TAA systems did not present an unreasonable risk of harm or injury to patients, including Plaintiff.

105.    Exactech knew or reasonably should have known and been aware that the Optetrak, Truliant, and Vantage Systems and its packaging contained inadequate warnings and instructions.

106.    The Optetrak, Truliant, and Vantage Systems and their corresponding packaging are not reasonably safe as labeled, distributed, marketed, delivered or sold by Exactech.

107.    The Optetrak, Truliant, or Vantage Systems were defective and unreasonably dangerous when they entered the stream of commerce and were received by Plaintiff and Plaintiff's doctors, because the warnings in the instructions for use, operative techniques, directions, marketing and promotional materials, advertisements, white papers, and other communications provided by Exactech or its sales force to doctors and patients with or about the Optetrak, Truliant, and Vantage Systems failed to adequately convey the potential risks and side effects of the Optetrak, Truliant, and Vantage Systems and the dangerous propensities of the devices, which risks Exactech knew (or reasonably should have known).

108.    Exactech further failed to adequately disclose the devices' propensity to undergo substantial early polyethylene wear, component loosening or other failure causing serious complications, including grinding, swelling, tissue damage, instability, osteolysis, bone loss and other injuries, as well as the need for revision surgery in patients.

109.    The instructions for use, operative techniques, directions, marketing and promotional materials, advertisements, white papers, and other communications regarding the Optetrak, Truliant, or Vantage Systems were additionally defective because they did not provide instructions concerning how—if at all—the risks associated with the Optetrak, Truliant, or Vantage Systems could be avoided, minimized, detected, or treated.

110.    The inadequate warnings for the Optetrak, Truliant, and Vantage Systems existed when the devices left Exactech's control.

111.     Plaintiff's Optetrak System reached Plaintiff (and Plaintiff's doctor) without substantial change in its condition.

112.     Plaintiff's doctor followed the instructions provided by Exactech with regard to the implantation of his Optetrak System.

113.     Plaintiff (and Plaintiff's doctor) could not, by the exercise of reasonable care, have discovered these defects and perceived its dangers or avoided injury.

114.     Exactech is strictly liable for providing inadequate warnings accompanying the Optetrak, Truliant, and Vantage Systems and their component parts, including the respective packaging of each.

115.     As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

116.     **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT IV – NEGLIGENCE

117.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

118.     Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for implantation into patients,

such as Plaintiff, by orthopedic surgeons in the United States.

119.     At all relevant times, Exactech had a duty to exercise reasonable care in its design, manufacture, labeling, distribution, and sale of its Optetrak, Truliant, and Vantage Systems.

120.     As a medical device manufacturer, Exactech owed this duty of reasonable care not only to patients, like Plaintiff, but also to doctors, like Plaintiff's doctor.

121.     At all relevant times, and as discussed above, Exactech knew (or reasonably should have known) of the hazards, risks, and dangers of the Optetrak, Truliant, and Vantage Systems.

122.     Exactech knew (or reasonably should have known) that its misconduct with respect to the Optetrak, Truliant, and Vantage Systems was likely to cause harm in patients, like Plaintiff.

123.     As described above, Exactech failed to exercise reasonable care with respect to its design, manufacture, labeling, distribution, and sale of its Optetrak, Truliant, and Vantage Systems. More specifically, Exactech failed to:

   a.   reasonably and appropriately manufacture the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

   b.   reasonably and appropriately package the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

   c.   reasonably and appropriately distribute and store the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

   d.   reasonably and appropriately design the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

   e.   reasonably and appropriately label the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients; and

   f.   were otherwise negligent.

124.    As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

125.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT V –VIOLATION OF FLORIDA
## DECEPTIVE & UNFAIR TRADE PRACTICES ACT

126.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

127.    Plaintiff purchased the subject device from Exactech for personal purposes, as set forth in § 501.203 of Florida's Deceptive and Unfair Trade Practices Act ("Florida DUTPA").

128.    At all relevant times, Exactech, through its labeling, promotion, and marketing of the recalled Optetrak, Truliant, and Vantage Systems, intentionally engaged in unfair and deceptive acts or practices by misrepresenting the characteristics and benefits of the Optetrak, Truliant, and Vantage Systems and misrepresenting its standard, quality, or grade.

129.    Exactech further violated the Florida DUTPA by misleading and deceiving patients, including Plaintiff and Plaintiff's healthcare providers, regarding the substantial health risks associated with using the Optetrak, Truliant, and Vantage Systems, creating a likelihood of confusion and of misunderstanding about the safety of the device at issue.

130.    Plaintiff's healthcare providers acted in reasonable reliance upon Exactech's

unlawful trade practices through Exactach's misrepresentations and omissions. Had Exactech not engaged in the deceptive conduct described herein, reasonable physicians, including Plaintiff's doctors, would not have selected, recommended, acquired, or purchased the Optetrak, Truliant, or Vantage Systems, if they had known the device at issue posed unreasonable and substantial risks to its health.

131.    Likewise, Plaintiff acted in reasonable reliance upon Exactech's unlawful trade practices through Exactech's misrepresentations and omissions. Had Exactech not engaged in the deceptive conduct described herein, reasonable patients, including Plaintiff, would not have consented to the use of an Optetrak, Truliant, or Vantage Systems, if they had known the device at issue posed unreasonable and substantial risks to their health.

132.    All of these incomplete and inadequate disclosures regarding the safety and efficacy of the Optetrak, Truliant, and Vantage Systems amounted to deceptive acts or business practices as defined by the Florida DUTPA.

133.    As a direct and proximate result of the deceptive and unlawful trade practices of Exactech, Plaintiff suffered and will continue to suffer damages for which he is entitled to recovery, including but not limited to compensatory damages, treble damages, attorneys' fees, and all other damages cognizable under law.

134.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## PUNITIVE DAMAGES

135.    Plaintiff adopts and incorporates by reference all of the foregoing language of this

Complaint as if fully set forth herein and further states as follows:

136.     Exactech's misconduct described herein consisted of gross negligence, recklessness, oppression, fraud, or malice, and was done with advance knowledge, willful and wanton disregard for the safety and health of Plaintiff and others, or ratification by Exactech's officers, directors, or managing agents.

137.     Despite its knowledge that the Optetrak, Truliant, and Vantage Systems were failing at higher rates and causing serious injuries, Exactech chose profits over the safety of patients when they sold and marketed a device posing significant health risks.

138.     Despite having sufficient knowledge to appreciate the risks related to the propensity of Exactech's Optetrak, Truliant, and Vantage Systems to fail—which Defendants knew was likely to result in serious injuries—Exactech intentionally and recklessly failed to warn patients, doctors, or the general public.

139.     Despite having sufficient knowledge to appreciate the risks related to the propensity of Exactech's Optetrak, Truliant, and Vantage Systems to fail—which Defendants knew was likely to result in serious injuries—Exactech chose not to initiate a recall until recently.

140.     Exactech's decisions with respect to its defective TKA and TAA systems show a conscious indifference to the health and safety of the millions of patients.

141.     Instead of deciding to better understand this failure and to warn the public, Exactech downplayed and recklessly disregarded its knowledge of the defective nature of the Optetrak, Truliant, and Vantage Systems' potential for causing serious injuries. Instead of releasing truthful information, correcting the defect, or providing adequate warnings, Exactech chose to instead disseminate misleading information regarding the safety (and failure rates) of its TKA and TAA systems in an effort to mislead patients, doctors, and the public.

142.     As a result of Exactech's own misconduct, both Exactech, Inc. and Exactech US, Inc., are liable for punitive damages in an amount to be determined by a jury.

## **PRAYER FOR RELIEF**

143.     Plaintiff respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff:

a.     Plaintiff's medical expenses, physical pain and suffering, and other compensatory damages to be proven at trial;

b.     Damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, loss of consortium, and other non-economic losses sustained as a result of Exactech's misconduct;

c.     Past, present, and future out-of-pocket costs, lost income, revenue, profits, or business opportunity, lost earning capacity, and costs related to medical treatment which have or may be recommended for Plaintiff;

d.     Attorney's fees, expenses, and recoverable costs incurred in connection with this action;

e.     Plaintiff's Loss of Enjoyment of Life;

f.     Pre- and Post-Judgment Interest; and

g.     Such other relief to which Plaintiff may be justly entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all counts and as to all issues.


Dated: June 21, 2022                    Respectfully Submitted,

*/s/ Ben C. Martin*
Ben C. Martin (TX Bar No.: 13052400)
bmartin@martinbaughman.com
Laura J. Baughman (TX Bar No.: 00791846)
lbaughman@martinbaughman.com
Emily T. Acosta (IL Bar No.: 6312216)
eacosta@martinbaughman.com
**MARTIN BAUGHMAN, PLLC**
3141 Hood Street, Suite 600
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590